IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 94-50634
Summary Calendar
_____

United States of America,

Plaintiff/Appellee,

versus

Armando Ramirez-Rodriguez,

Defendant/Appellant.

_____

Appeal from the United States District Court
For the Western District of Texas
(DR-94-CA 06 (DR-91-CR-06))

_____

(May 22, 1995)

Before JOHNSON, BARKSDALE, and PARKER, Circuit Judges.[*]

JOHNSON, Circuit Judge:

Federal prisoner, convicted of conspiracy to possess with intent to distribute marijuana, filed a motion for relief pursuant to 28 U.S.C. § 2255. In the motion, the prisoner contended that his conviction violated double jeopardy because he was acquitted of possession with the intent to distribute marijuana and that his trial counsel was constitutionally ineffective for various reasons. Adopting the magistrate judge's recommendation, the district court denied the prisoner's motion. The prisoner now appeals and, finding

_____

[*] Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

no error, we AFFIRM.

I.    FACTS AND PROCEDURAL HISTORY

In late 1990, Conrad Lopez, an informant on the DEA's payroll and acting at the behest of Agent Robert Howell, contacted Domingo Martinez-DeLeon (Martinez) in an attempt to determine if Martinez was engaged in drug trafficking.  Over the course of several meetings with Martinez, Lopez was introduced to Alcadio Cervantez-Ramon (Cervantez) and was shown a Kenworth tractor parked at Cervantez' residence.  This tractor was allegedly used to transport quantities of marijuana.  Moreover, Lopez learned that Martinez was to deliver approximately 2000 pounds of marijuana to Dallas.

Lopez communicated this information to Agent Howell and surveillance of the Kenworth truck was instituted when it was located at a Del Rio truck stop on January 12, 1991.  For several days, the tractor, now hooked to a refrigerated trailer, remained at the truck stop.  While at the truck stop, DEA agents often observed Cervantez checking on the rig and he moved it once to a different location on the truck stop parking apron.  Also, DEA agents several times observed a gray pickup truck, owned by Appellant Armando Ramirez-Rodriguez (Ramirez), driving up to the tractor-trailer and then to a nearby motel where Romero Gonzalez-Quintanilla (Gonzalez) had taken two rooms.  Martinez, Gonzalez and Ramirez were seen together at the motel on several occasions and these three also met with Cervantez at the truck stop restaurant.

Late on the night of January 15th, Cervantez retrieved the tractor-trailer rig from the truck stop and proceeded to the

2

residence of Antonio Delgado.  The tractor-trailer remained there for about two hours.  The surveillance agents were unable, however, to see what, if anything, occurred while the truck was parked at Delgado's residence.

Shortly after midnight on the morning of the 16th, the tractor-trailer rig left Delgado's residence and returned to the truck stop. Also shortly after midnight, Ramirez, Martinez and Gonzalez left the motel in the gray pickup and proceeded to the truck stop where they met up with Cervantez in the truck stop restaurant.  Cervantez left in the tractor-trailer after about 10-20 minutes, followed 15 minutes later by Ramirez, Martinez and Gonzalez in the gray pickup.

DEA agents communicated their suspicions about these two vehicles to the border patrol checkpoint about twenty miles northwest of Del Rio.  Thus, border patrol agents stopped the tractor-trailer when it arrived and found about 1,720 pounds of marijuana.  The gray pickup, driven by Ramirez, arrived shortly after the tractor-trailer. Ramirez, Gonzalez and Martinez were then arrested and a loaded, 9mm pistol was found protruding from underneath the right hand side of the bench seat under where Martinez had been sitting.

A Del Rio grand jury returned indictments charging Ramirez, Martinez, Cervantez, Gonzalez and Delgado with conspiracy to possess with intent to distribute and possession with intent to distribute more than 100 kilograms of marijuana.  Also, all defendants except Delgado were charged in a third count of carrying a firearm during and in relation to the drug trafficking offenses charged in the first two counts.

3

A consolidated trial was held before a jury and the jury returned guilty verdicts against all co-conspirators as follows: 1) all five men were found guilty on the conspiracy count; 2) Martinez, Cervantez and Delgado were found guilty on the possession count; and 3) Martinez alone was found guilty on the firearm offense.  Relevant to the instant appeal, the district court sentenced Ramirez to a term of imprisonment of 121 months, a five-year term of supervised release, and a $50 special assessment.

On November 2, 1992, this Court, in an unpublished opinion, affirmed the convictions and sentences of Martinez, Ramirez, Cervantez and Gonzalez.[1]  Delgado's conviction was overturned for insufficiency of the evidence of his guilt.

Thereafter, Ramirez filed the instant motion for habeas relief pursuant to 28 U.S.C. § 2255.  In that motion, Ramirez argued that his conviction for conspiracy to possess with intent to distribute marijuana violated double jeopardy because he was acquitted of possession with intent to deliver marijuana.  Also, Ramirez contended that his trial counsel was ineffective for failing to bring to the court's attention that several jurors had seen him in handcuffs, for failing to argue effectively for a minimal-participant adjustment and for failing to argue effectively against an upward adjustment for possession of a dangerous weapon during the offense.

The case was referred to a magistrate judge who issued a report and recommendation finding that all of Ramirez' contentions were

---

[1] *United States v. Martinez-DeLeon*, 979 F.2d 208 (Table) (5th Cir. Nov. 2, 1992) (unpublished), *cert. denied*, 113 S.Ct. 1434 (1993), *and cert. denied*, 113 S.Ct. 1828 (1993).

without merit. Additionally, the magistrate judge found that a hearing was not necessary. Ramirez filed objections to the magistrate judge's report, but the district court rejected those objections and adopted the magistrate judge's recommendation. Thus, the district judge issued an order denying the relief Ramirez sought. Ramirez now appeals from that judgment.

II. DISCUSSION

1. Double Jeopardy

In his first point of error, Ramirez contends that his conspiracy conviction is inconsistent with his acquittal on the possession charge and violates double jeopardy. This contention is without merit. This is because a drug conspiracy is a separate and distinct "offense" for double jeopardy purposes from the underlying substantive drug offense. *United States v. Brown*, 29 F.3d 953, 957 (5th Cir.), *cert. denied*, 115 S.Ct. 587 (1994); *United States v. Rodriguez*, 948 F.2d 914 (5th Cir. 1991), *cert. denied*, 112 S.Ct. 2970 (1992); *United States v. Kalish*, 734 F.2d 194, 197 (5th Cir. 1984), *cert. denied*, 105 S.Ct. 1169 (1985). Therefore, acquittal on the substantive drug count does not bar conviction on the conspiracy count.

2. Ineffective Assistance of Counsel

Ramirez argues that his counsel was ineffective at trial because he failed to move for a mistrial when several jurors saw him in handcuffs. Moreover, Ramirez contends that his counsel was ineffective at sentencing because he did not argue effectively for a minimal-participant adjustment and because he failed to argue

effectively against the upward adjustment imposed for the possession of a dangerous weapon during the offense.

To succeed with a claim of ineffective assistance of counsel, Ramirez would have to show that 1) his trial counsel's performance was deficient, and 2) that the deficient performance prejudiced his rights. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984). If proof of one element is lacking, we need not examine the other. *Kirkpatrick v. Blackburn*, 777 F.2d 272, 285 (5th Cir. 1985), *cert. denied*, 106 S.Ct. 2907 (1986). In order to prove the prejudice prong of the *Strickland* test, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. *United States v. Rosalez-Orozco*, 8 F.3d 198, 199 (5th Cir. 1993).

Initially, Ramirez alleges that two or three jurors allegedly saw him in handcuffs outside the courtroom. Ramirez contends that he related this to his trial counsel, but that his counsel failed to move for a mistrial and thus was constitutionally ineffective.

This Court has long recognized that an accused person is presumed innocent and is, therefore, entitled to the physical indicia of innocence. *United States v. Theriault*, 531 F.2d 281, 284 (5th Cir.), *cert. denied*, 97 S.Ct. 262 (1976). We have also recognized, however, that "brief and inadvertent exposure to jurors of defendants in handcuffs is not so inherently prejudicial as to require a mistrial, and defendants bear the burden of affirmatively demonstrating prejudice." *United States v. Decidue*, 603 F.2d 535, 549 (5th Cir. 1979), *cert. denied*, 100 S.Ct. 1345 (1980); *see also*,

6

*United States v. Ware*, 897 F.2d 1538, 1542 (10th Cir. 1990) (in absence of showing of prejudice, fleeting view of defendant in handcuffs does not justify a new trial), *cert. denied*, 110 S.Ct. 2629 (1990).

In his brief, Ramirez himself characterizes this alleged encounter where the jurors saw him as "inadvertent." Moreover, in no way does Ramirez affirmatively demonstrate any prejudice. Rather, Ramirez merely suggests that there is a "very distinct possibility" that the jury was biased by this incident. In light of the substantial evidence of Ramirez' guilt, this is not sufficient to meet the prejudice prong of the *Strickland* test for ineffective assistance of counsel.

Finally, Ramirez' arguments as to his counsel's ineffectiveness at sentencing are undercut by this Court's opinion on direct appeal. First, Ramirez argues that his counsel was ineffective at sentencing for failing to argue successfully[2] for a minimal-participant reduction under U.S.S.G. § 3B1.2. However, this Court, on direct appeal, rejected Ramirez' contention that he was entitled to such an adjustment. Thus, Ramirez cannot show that he was prejudiced by any such alleged deficiency by counsel.

Lastly, Ramirez contends that his counsel was ineffective for

---

[2] Although unsuccessful, Ramirez' trial counsel did argue at sentencing for an adjustment to adequately reflect his lesser role in the offense. Ramirez contends that his counsel was ineffective, though, because he did not make this argument strongly enough in that he failed to put forth the proper facts to support this issue. However, nowhere does Ramirez identify what facts should have been presented to the sentencing court that were not presented.

failing to argue that Ramirez was not aware of the weapon found under the passenger seat of the pickup he was driving. Again, though, this Court specifically dealt with this issue on direct appeal. In so doing, this Court determined that the district court's finding that a co-defendant's possession of a dangerous weapon was reasonably foreseeable to Ramirez was sufficient to support the enhancement even if Ramirez was not actually aware of that possession. R. Vol. 1 at 36-37. Hence, even if counsel's failure to make this argument was error, Ramirez cannot show that but for that error there was a reasonable probability that his sentence would have been different. Thus, Ramirez cannot make out the prejudice showing required under the *Strickland* test.

III. CONCLUSION

For the reasons stated above, the judgment of the district court is AFFIRMED.